IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

DOUGLAS TURNER            §
   TDCJ-CID #681306        §
                               §
VS.                       §         C.A. NO. C-09-053
                               §
RICHARD L. CRITES, ET AL.     §

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS ACTION

This case was filed as a civil rights action by a state prisoner pursuant to 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam), cert. denied, 527 U.S. 1041 (1999). Plaintiff's pro se complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that plaintiff's § 1983 claims seeking damages arising from his allegedly unconstitutional assignment to

administrative segregation be dismissed for failure to state a claim and/or frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.      Jurisdiction.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.     Background facts and plaintiff's allegations.

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and is currently incarcerated at the McConnell Unit in Beeville, Texas. He filed this lawsuit on March 18, 2009, challenging as unconstitutional his assignment to administrative segregation in December 2007, based on a gang intelligence officer's suspicion that he remained a member of a Security Threat Group known as the Aryan Circle, and despite plaintiff's protestations to the contrary. (D.E. 1). Plaintiff named as defendants the following McConnell Unit officials: (1) Assistant Warden Richard Crites; (2) Assistant Warden Norris Jackson; and (3) Officer Joseph Buttery.

A Spears[1] hearing was held on April 28, 2009. The following allegations were made at the Spears hearing or in plaintiff's original complaint.

Plaintiff has past associations with a Security Threat Group (S.T.G.) known as the Aryan Circle. However, in January 1997, plaintiff told an officer of the Aryan Circle that

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

he no longer wanted to be in the gang, and he was permitted to disassociate. In fact, an Aryan Circle officer tried to modify plaintiff's Aryan Circle tattoo to not reflect the gang's symbol. Plaintiff also informed the Gang Intelligence officer at the Connally Unit that he had disassociated from the Aryan Circle, and this information was documented in his file. Since that time, plaintiff has not been active or involved in any racial riots or fights, nor has he refused any housing assignment based on race. He tries to cover his old tattoo with a patch, but it is difficult to cover due to the color and size of the block letters.

In 2005, plaintiff was transferred off the Connally Unit based on a life in danger claim that was unrelated to the Aryan Circle, and transferred to the McConnell Unit. At the McConnell Unit, Aryan Circle members left him alone because they knew he had permission to leave the gang. In addition, McConnell Unit officers knew that he was not associated with a gang.

In December 2007, a dispute arose between plaintiff and another inmate. Lieutenant Trevino knew that a fight would ensue, so he placed plaintiff in handcuffs and took him to 11-Building.[2] There, the McConnell Unit Gang Intelligence officer, Sergeant Popal, noticed plaintiff's old Aryan Circle tattoo. Sergeant Popal assumed that plaintiff was a member of the Aryan Circle, and attempted to recruit plaintiff to "snitch" on his former gang members. Plaintiff told Sergeant Popal that he was no longer a member of Aryan Circle, and he told Sergeant Popal to confirm this fact with the Connally Unit. Plaintiff testified that, although

---

[2] Plaintiff received a minor disciplinary case for refusing to stop arguing with the other inmate.

he did have information about the Aryan Circle, he refused to tell Sergeant Popal because he was afraid he would be discovered and then either beaten or killed.  Sergeant Popal then ordered that plaintiff be retained in Administrative Segregation (ad. seg.) as an active S.T.G. member. Huntsville approved this assignment, and so did Warden Jackson.

Plaintiff challenged his assignment to ad. seg.  Sergeant Popal had left the TDCJ, and Sergeant Buttery was now the Gang Intelligence officer.   Plaintiff sent I-60s to Sergeant Buttery requesting that he be transferred off ad. seg., but his requests were denied.

A year later, on December 8, 2008, plaintiff filed a Step 1 grievance complaining about his assignment to administrative segregation.  He alleged that the assignment was based on a bogus gang affiliation, and he complained that his attempts to be interviewed by S.T.G. officials were being ignored. He also complained that his confinement in ad. seg. amounted to cruel and unusual punishment.  He requested immediate released to general population and that his file be updated to remove the active S.T.G. member status.

By response dated January 6, 2009, Warden Jackson advised plaintiff that the evidence supported the finding that he was an active gang member to justify his placement in ad. seg.  However, he told plaintiff that a disassociation investigation had begun on June 9, 2008, and that it would take two years before he would be considered fully disassociated from the gang.

On January 12, 2009, plaintiff filed a Step 2 grievance challenging the Step 1 decision.  He reiterated that S.T.G. officials would not answer his request for an interview. On February 25, 2009, plaintiff's Step 2 grievance was denied.

4

Plaintiff is seeking to be released from administrative segregation and that the gang affiliation notation be removed from his file.  In addition, he requests monetary damages for his mental pain and suffering, claiming that in ad. seg., he is at a greater risk of physical harm.

## III.   Discussion.

### A.   Legal standard.

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted.  42 U.S.C. § 1997e(c)(2).  "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995).  An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002).  The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed.  Id.

### B.   Placement in administrative segregation.

Plaintiff challenges his assignment to ad. seg. arguing that he is not a gang member and therefore, his classification as such is unwarranted.  He claims further that his assignment to ad. seg. places him in danger of assault or even death.  Thus, he raises a due process claim,

5

that he was placed in ad. seg. without cause, and an Eighth Amendment claim that the ad. seg. conditions constitute cruel and unusual punishment.

### 1.   *Due process.*

Plaintiff maintains that his placement in ad. seg. without a hearing violates his rights to due process.  To maintain his due process challenge, plaintiff must establish that his transfer to ad. seg. deprived him of a liberty interest protected by the Fourteenth Amendment. Meachum v. Fano, 427 U.S. 215, 223 (1976).  However, generally speaking, due process protections attach only to those punishments that impose an atypical and significant hardship in relation to ordinary incidents of prison life, or to those that extend the length or duration of confinement.  Sandin v. Conner, 515 U.S. 472, 484-86 (1995).  Indeed, a prisoner has no liberty interest in his custodial classification.  Wilkerson Stalder, 329 F.3d 431, 435-36 (5th Cir.2003).  See also Wilkinson v. Austin, 545 U.S. 209, 221 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.").

Moreover, the Fifth Circuit has repeatedly affirmed that "[p]rison officials should be accorded the widest possible deference" in classifying prisoners' custodial status as necessary "to maintain security and preserve internal order."  Hernandez v. Velasquez, 522 F.3d 556, 562 (5th Cir. 2008) (citations omitted).  In this case, it cannot be said that defendants' decision to keep plaintiff in ad. seg. was without some basis due to plaintiff's past affiliation with the Aryan Circle, his visible tattoo, and his refusal to cooperate with Sergeant Popal's investigation.  In fact, even if his placement in ad. seg. was based on

6

erroneous information, such facts do not give rise to a due process claim.  See Luken v. Scott,
71 F.3d 192, 193 (5th Cir. 1995) (placement in administrative segregation based on allegedly
erroneous gang-member status was not a deprivation of a constitutionally cognizable liberty
interest"); Harper v. Showers, 174 F.3d 716 (5th Cir. 1999) (placement of prisoner on
lockdown under 24-hour observation did not implicate due process.)

Only when a prisoner demonstrates "extraordinary circumstances" may he maintain
a due process challenge to a change in his custodial classification.  Sandin, 515 U.S. at 484.
Cases where segregated confinement is sufficiently atypical to implicate a due process liberty
interest involve circumstances much harsher than those presented here.  In Wilkerson v.
Stalder, the Fifth Circuit held that due process *might* have been violated where the plaintiff
had been kept on lockdown status for thirty years.  Id. 329 F.3d at 436 (remanding for
determination whether such confinement was "atypical" under Sandin).  In another case, the
Supreme Court held that transfer to the Ohio "Supermax" facility implicated a liberty
interest, in part because the conditions there were "more restrictive than any other form of
incarceration in Ohio."  Wilkinson, 545 U.S. at 214.  The Wilkinson Court noted that at the
Supermax facility, "almost all human contact is prohibited."  Id. at 223.  Ohio Supermax
prisoners are kept in single cells with solid metal doors that prevent communication from one
cell to another; prisoners take all their meals alone in their cells rather than a common area;
and "opportunities for visitation are rare" and are conducted through glass walls.  Id. at 223-
24.  Ohio Supermax inmates spend 23 hours a day alone in their cells, where a light remains
on at all times.  Id. at 224.  Moreover, confinement at the Supermax facility is indefinite, and

otherwise eligible inmates are disqualified for parole consideration.  Id.  These conditions and others were sufficiently extraordinary that the Supreme Court concluded prisoners had a liberty interest in avoiding assignment to the Supermax facility.  Id.

The thirty-year confinement in Wilkerson and the extreme conditions in Wilkinson are distinguishable from the present facts.  Plaintiff has not shown that the conditions in the McConnell Unit ad. seg. pose a significant or atypical hardship.  Moreover, plaintiff is in ad. seg. for a finite time: two years to complete the gang disassociation process.  Accordingly, he fails to state a constitutionally recognizable claim under the Due Process Clause.

> ### 2.    *Cruel and unusual punishment.*

Plaintiff also contends that his placement in ad. seg. amounts to cruel and unusual punishment.  He testified that, as a result of his isolation, he has begun to hear voices in his head.

The Fifth Circuit has held that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be grounds for a constitutional claim."  Hernandez, 522 F.3d at 562.  The Supreme Court has noted that placement in solitary confinement for an *indeterminate* amount of time may amount to cruel and unusual punishment. See Hutto v. Finney, 437 U.S. 678,  686 (1978) (while an indeterminate time in solitary confinement may be unconstitutional, a determinate time where the conditions are not materially different from those affecting other prisoners are within the authority of the prison administrator and not cruel or unusual).  In this case, because

plaintiff's confinement is for a determinate amount of time, the conditions of which he complains are not serious enough to constitute an Eighth Amendment violation.

## IV.   Recommendation.

Plaintiff has failed to state a claim upon which § 1983 relief can be granted. Accordingly, it is respectfully recommended that plaintiff's § 1983 claims for injunctive relief and/or damages be dismissed for failure to state a claim and as frivolous.   See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).  It is further recommended that, because this is a dismissal described by 28 U.S.C. § 1915(g) ( a "strike" for frivolous filing), that the Court instruct the Clerk to provide copies of the dismissal order to the parties, to the TDCJ–Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159, and to the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler Texas, 75702, Attention: Betty Parker.

Respectfully submitted this 13th day of May, 2009.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).